This is an appeal from a judgment in favor of the plaintiffs, William and Martha Dolbeer, and against the defendant, Fred Aldridge, individually and doing business as Fred Aldridge Enterprises ("Aldridge"), in an action for breach of contract. The questions presented are whether there was sufficient evidence to support the trial court's finding that Aldridge breached the contract, and if so, whether the damages awarded were proper.
In September 1984, the Dolbeers entered into a contract with Aldridge whereby they purchased approximately 3.3 acres of undeveloped real estate from him for $7,500. The property was part of a residential development planned by Aldridge known as Caldwell Estates. That sales contract contained the following provision:
 "Seller [Aldridge] will install water to property at no cost, other than required by County, to Purchaser[s] [the Do]beers]."
Despite that provision, Aldridge has not yet installed water on the Dolbeers' property. As a result of his failure, the Dolbeers filed a complaint alleging breach of contract and seeking specific performance or money damages. Following a nonjury trial, the court entered a judgment for the Dolbeers awarding damages of $10,270. Aldridge appeals from that judgment.
 Liability
When a contract states that an act is to be done but no time is prescribed for its performance, as was the case with Aldridge's obligation to supply water to the Dolbeers' property, the law requires that the act be done within a reasonable time. Hendrix, Mohr Yardley, Inc. v. City ofDaphne, 359 So.2d 792, 796 (Ala. 1978). What is a reasonable time depends upon *Page 1269 
the nature of the act to be done and all the circumstances relating to that act and is a question to be determined by the trier of fact — in this instance the trial judge. Id.
Aldridge testified that at the time the contract was entered into he understood that the Dolbeers were purchasing the property for the purpose of building a home on it and were, in fact, "anxious to build." Aldridge also testified that he doubted that the Dolbeers would have purchased the property if they had known that it still would not be supplied with water almost six years later. William Dolbeer testified that during the summer of 1985 he and Martha cleared the property in preparation for building. He said they also spent approximately $1,600 to have a driveway constructed and paid a local architect $1,178 to draw plans for the house they wished to build.
Aldridge testified that he had attempted to have a water system installed to serve Caldwell Estates soon after the Dolbeers bought the property, but was not successful. Later, Aldridge assured the Dolbeers and other purchasers that he would be able to install water when the county ran a water main down nearby Caldwell Lane. That water main was installed early in 1986, and Aldridge testified that it could have been used to supply the Dolbeers with water as early as April of that year.[1]
However, soon after the county water main had been completed, Aldridge learned that a large residential development was being planned by another developer for property adjacent to Caldwell Estates. That adjacent development was to be annexed into the City of Huntsville and would then receive city services, including water. Therefore, Aldridge decided to discontinue his efforts to connect to the county water supply, and to await the completion of the nearby development and its subsequent annexation into Huntsville. He testified that after that annexation, he hopes to have Caldwell Estates annexed into the city, at which time, he says, he will attempt to supply the development with water from the city system. However, Aldridge conceded that his plan was contingent on a number of events over which he had no control, including the completion of the adjacent development and the annexation of Caldwell Estates into Huntsville. Aldridge speculated that the Dolbeers would have water in six months to one year after the adjacent development was annexed if his plan was successful.
Based on the testimony and other evidence presented at trial, this Court agrees that Aldridge failed to fulfill his contractual obligation to supply the Dolbeers with water within a reasonable time, thereby breaching the contract. Aldridge's testimony clearly established that he could have installed water on the Dolbeers' property in early 1986, but chose not to do so. That failure alone was a breach of the reasonable time requirement implicit in the contract. Hendrix, supra. His continuing failure to install water is further evidence of that breach. Therefore, the trial judge's finding of liability is affirmed.
 Damages
The trial court awarded the Dolbeers damages totalling $10,270. Although the court's judgment does not explain how that figure was arrived at, this Court notes that the three main elements of damages claimed by the Dolbeers — $7,500 spent to purchase the property, $1,600 spent to construct a driveway, and $1,178 spent on architectural drawings — total $10,278. Aldridge argues that the damages awarded are excessive and are not supported by the evidence.
The ordinary measure of damages awarded in actions for breach of contract is an amount sufficient to return the plaintiff to the position he would have occupied had the breach not occurred. Boyett v. Oakes, 518 So.2d 37 (Ala. 1987). In addition, the damages claimed must be "the natural and proximate consequences of the breach and such as may reasonably be supposed to *Page 1270 
have been within the contemplation of the parties at the time the contract was made." Winslett v. Rice, 272 Ala. 25, 31,128 So.2d 94, 99 (1960); Marshall Durbin Farms, Inc. v. Landers,470 So.2d 1098 (Ala. 1985); Alabama Pattern Jury Instructions:Civil 11.28 (1974); C. Gamble, Alabama Law of Damages § 17-1 (2d ed. 1988). The plaintiff has the burden of producing sufficient evidence of his loss to allow the fact finder to calculate the damages without operating from guesswork. Johnsonv. Harrison, 404 So.2d 337 (Ala. 1981).
After reviewing the record, this Court concludes that the evidence presented did not support an award of damages totaling $10,000. The evidence does not indicate that the Dolbeers have lost all use of the property or that it is totally without value to them. Rather, it appears that the property may have appreciated in value due to the extensive development of adjacent property. Therefore, the entire purchase price of the property cannot be included as an element of the Dolbeers' damages — at least not without requiring them to return the property to Aldridge. In addition, there is no evidence that the Dolbeers have abandoned their plans to build on the property, which were evidenced by their initial request for specific performance of the contract. Therefore, the architectural drawings they commissioned are still of some value to them.
For the reasons stated above, that portion of the judgment finding Aldridge liable for breach of contract is affirmed. However, that portion awarding damages is reversed and this cause is remanded for an evidentiary hearing to determine an amount that would be sufficient to restore the Dolbeers to the position they would have occupied had the breach not occurred.Boyett, supra.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] Aldridge received a letter from the Madison County director of public works listing the conditions that would have to be met before the county would supply water to his planned development. He stated that he could have satisfied those conditions as early as April 1986.